IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Ted (George) McCune and F4PS LLC,     § | |
| § | |
| Plaintiffs,     § | |
| § | |
| v.     § | Civil Action No.  4:22-cv-00604-O |
| § | |
| Zhongyiqun,     § | |
| § | |
| Defendant.     § | |

## OPINION & ORDER

Before the Court is Plaintiffs' Motion for Entry of Default and for Default Judgment Against Defendant Zhongyiqun (the "Motion") (ECF No. 11), filed January 11, 2023. The Clerk of the Court entered default on January 13, 2023. *See* Clerk's Entry of Default, ECF No. 12. After considering the Motion, the pleadings, and applicable law, the Court holds that Plaintiffs' Motion should be, and is hereby, **GRANTED**.

I.    **BACKGROUND**[1]

This action originates from a suit for copyright and trade dress infringement of Plaintiffs' light up lightsaber chopsticks. In 2019, Plaintiffs registered two copyrights, titled "Led Light Up Chopsticks" and "Lightsaber Chopsticks Handle B." Plaintiffs also registered two trade dresses for the chopstick configuration. Sometime after registering the copyrights and trade dresses, Plaintiffs discovered that Defendant was selling similar light up lightsaber chopsticks on Amazon.com.

---

[1] Facts are taken from Plaintiffs' Complaint unless otherwise noted. *See* Compl., ECF No. 1.

After discovering the listing, Plaintiffs filed a complaint with Amazon.com requesting that Amazon remove the listing for copyright infringement. Later, Amazon.com informed Plaintiffs that Defendant had submitted a counter-notification, claiming a good faith belief that the listing was removed as a result of mistake or misidentification. Thus, Amazon.com would reinstate the listing unless Plaintiffs provided Amazon.com with notice that a lawsuit had been filed against Defendant.

In response, Plaintiffs filed this lawsuit, and personally served Defendant at the address Defendant provided in her counter-notification.[2] Defendant did not and has not responded. Accordingly, the Court ordered Plaintiffs to move for default judgement against Defendant.[3] Plaintiffs thus filed the instant Motion. Because Defendant has not answered or otherwise appeared, the Clerk of the Court entered default on January 13, 2023.[4] Plaintiffs now move for entry of a default judgment for injunctive relief, statutory damages, and attorney's fees.

## II.     LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and subsequent default judgment. The Court may only enter a default judgment upon the completion of three steps. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, the defendant must *default* by failing to plead or otherwise respond to the complaint within the time required by the Federal Rules. *Id.* Next, the Clerk must *enter default* when the plaintiff establishes default by affidavit or otherwise. *Id.* Last, the plaintiff must ask the Court for entry of a *default judgment*. FED. R. CIV. P. 55(b); *N.Y. Life Ins.*, 84 F.3d at 141.

---

[2] Pls.' Aff. of Service, ECF No. 9.
[3] *See* Dec. 14, 2023 Order, ECF No. 10.
[4] *See* Clerk's Entry of Default, ECF No. 12.

A court has broad discretion to enter default judgments, but they are considered "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). They are reserved for instances "when the adversary process has been halted because of an essentially unresponsive party." *Id.* The Court recognizes that it may not issue a default judgment against an infant or incompetent defendant unless a general guardian, conservator, or other like fiduciary who has appeared represents that defendant. FED. R. CIV. P. 55(b)(2). Likewise, the Court may not issue a default judgment against an individual defendant in military service until an attorney represents him. 50 U.S.C. § 3931.

In deciding whether to grant a default judgment, the Court must decide three questions. First, the Court considers whether entry of default judgment is procedurally appropriate by weighing a non-exhaustive list of six factors: (1) whether there are disputed material issues of fact; (2) whether a good faith mistake or excusable neglect caused the default; (3) whether there has been substantial prejudice; (4) the harshness of a default judgment; (5) whether the grounds for a default judgment are clearly established; and, though not applicable in this case, (6) whether the defendant's motion would oblige the Court to set aside the default. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, the Court assesses the merits of the plaintiff's claims and the sufficiency of the complaint. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."). And third, the Court resolves any remaining issues regarding the requested amount of damages, if any, and other relief requested. "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th

Cir. 1987). But a default judgment does not itself establish the *amount* of damages. *Id.* (emphasis added); *Howard v. Weston*, 354 F. App'x 75, 76 (5th Cir. 2009) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). Rather, movants for default judgment must provide a detailed factual basis in support of their request for damages. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### III.    ANALYSIS

#### A.  Entry of Default Judgment is Procedurally Appropriate

Having weighed the six *Lindsey* factors, the Court finds that granting default judgment is procedurally warranted. First, because Defendant failed to appear or file any responsive pleadings in this action, the Court accepts Plaintiffs' well-pled facts and finds there are no material facts in dispute. *See Nishimatsu*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"); *Tex. Guaranteed Student Loan Corp. v. Express Moving, LLC*, No. 3:09-cv-824-O, 2010 WL 727756, at *1 (N.D. Tex. Feb. 26, 2010) (O'Connor, J.). Second, there is no evidence to suggest that Defendant's failure to defend this action arises from a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Third, Defendant's failure to appear causes substantial prejudice to Plaintiffs because it prevents them from receiving expeditious relief. *See Wooten v. McDonald Transit Assocs., Inc.*, 775 F.3d 689, 700–01 (5th Cir. 2015) (suggesting it would be unfair to make the plaintiffs wait for relief because of a defendant's failure to heed the court); *United States v. Fincanon*, No. 7:08-cv-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (O'Connor, J.) (holding that the defendant's failure to respond brought the adversary process to a halt and prejudiced the plaintiff's interests). Fourth, Defendant's failure to respond, despite receiving proper service, mitigates the harshness of a default judgment. *See Fincanon*, 2009 WL 301988, at *2 (citing *Lindsey*, 161 F.3d at 893). Defendant has had ample

time to respond to the Complaint as Defendant was properly served over four months ago. *See Fincanon*, 2009 WL 301988, at *2 (suggesting the defendant had sufficient time to answer the complaint when plaintiff requested an entry of default thirty-five days after serving the defendant). Fifth and finally, though Defendant has not challenged default in this case, the Court is presently unaware of any "good cause" to set aside the default if it is later attacked. *See Lindsey*, 161 F.3d at 893 (citing FED. R. CIV. P. 55(c)).

Procedurally, there is no evidence that Defendant is an infant, incompetent, or engaged in military service. Although Plaintiffs allege they have had issues contacting the Defendant,[5] the process server's affidavit indicates he personally served Defendant at the address provided in the counter-notification.[6] Further, the process server's description of Defendant matches the description of Defendant by Defendant's purported business associate.[7] As a result, Plaintiffs sought—and the Clerk of Court properly entered—default as to Defendant.[8] Thus, having reviewed the applicable law and circumstances of this case, the Court finds that granting default judgment is procedurally appropriate.

### B. The Pleadings Establish a Viable Claim for Relief and a Sufficient Basis to Enter Default Judgment

The Court accepts the well-pleaded allegations in Plaintiffs' Complaint as true. *Nishimatsu*, 515 F.2d at 1206. "Given their default, Defendants have admitted the well-pleaded facts set forth in the complaint." *Ford Motor Credit Co. LLC v. Hancock*, No. 3:14-CV-0280-P, 2015 WL 13118076 at *3 (N.D. Tex. Mar. 16, 2015). At the default judgement stage, the well-pleaded factual allegations "need only 'be enough to raise a right to relief above the speculative level, on the

---

[5] *See* Pls.' Mot. ¶ 23–24, ECF No. 11.
[6] Pls.' Aff. of Service, ECF No. 9.
[7] *See id.; see also* Pls.' Mot., Ex. H, ECF No. 11-8.
[8] *See* Clerk's Entry of Default, ECF No. 12.

assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Id.* Here, Plaintiffs assert four causes of action against Defendant—copyright infringement under the Copyright Act and trade dress infringement under the Lanham Act. Having considered the pleadings, the Court finds Plaintiffs have established a sufficient basis to enter default judgment on both claims.

### 1. Plaintiffs Establish a Valid Copyright Claim

To prove copyright infringement, Plaintiffs must show (1) ownership of a valid copyright and (2) unauthorized copying. *Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001). Plaintiffs have satisfied both requirements. To start, Plaintiffs have proven ownership of a valid copyright by presenting and attaching certificates of registration for their copyrights. *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) ("A certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright.").

Further, to prove unauthorized copying, Plaintiffs must show both "factual" copying and "actionable" copying. *Batiste v. Lewis*, 976 F.3d 493, 502 (5th Cir. 2020). Typically, a plaintiff proves factual copying—that is, that the defendant actually used the plaintiff's copyright to make the defendant's work—through proof that (1) the defendant actually had access to the copyrighted work prior to creating the infringing work and (2) probative similarity between the works. *Id.* If the plaintiff cannot show that the defendant had access, the plaintiff can prove factual copying by showing that the works are "strikingly similar." *Id.* Once plaintiffs prove factual copying, they can prove actionable copying by showing that the works are substantially similar. *Id.*

Plaintiffs here have proved both factual and actionable copying. As to factual copying, although Plaintiffs present no proof of access, the Court finds the works are strikingly similar. Looking at the side-by-side comparison of the parties' works, both chopsticks have clear bodies, black lined ends, and clear tips.[9] Further, the chopsticks appear to be the exact same size and shape. Given these similarities, it appears unlikely that Defendant created its chopsticks without some reference to Plaintiffs' work. *See Armour v. Knowles*, 512 F.3d 147, 156 n.19 (5th Cir. 2007) (recognizing that works are strikingly similar when they are so similar that "copying is the only realistic basis for the similarities at hand"). As to actionable copying, and for these same reasons, the Court finds the works are substantially similar. *See Batiste*, 976 F.3d at 502 (explaining that the substantial similarity analysis requires considering whether a layman would view the works as substantially similar when looking at a side-by-side comparison). Thus, Plaintiffs have presented a valid copyright claim sufficient to enter default judgement.

### 2. Plaintiffs Establish a Valid Trade Dress Claim

A product's trade dress is "essentially its total image and overall appearance." *Blue Bell Bio-Med. v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989). To prove trade dress infringement, plaintiffs must show that (1) the trade dress qualifies for protection and (2) the trade dress has been infringed. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117–18 (5th Cir. 1991). Plaintiffs have satisfied both elements of trade dress infringement.

Typically, analyzing whether a trade dress qualifies for protection requires considering the product's functionality, distinctiveness, and secondary meaning. *Id.* But when plaintiffs present proof of registration, as Plaintiffs have here, the registration serves as prima facie proof of the mark's validity and the registrant's exclusive right to use the mark in commerce. *Amazing Spaces,*

---

[9] Pls.' Mot. ¶ 16, ECF No. 11.

*Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) (citing 15 U.S.C. §§ 1057(b); 1115(a)). Thus, Plaintiffs have shown that their trade dress qualifies for protection.

To determine whether a protected trade dress has been infringed, courts must decide whether the similarity between the parties' respective trade dresses creates a "likelihood of confusion" for potential customers. *Sno-Wizard Mfg., Inc. v. Eisemann Prod. Co.*, 791 F.2d 423, 425–26 (5th Cir. 1986). The Fifth Circuit considers eight factors to determine whether a likelihood of confusion exists: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (citing *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986)). "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the factors." *Id.* (citing *Conan Prop., Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 150 (5th Cir. 1985)). Although Plaintiffs do not address each factor in their pleadings, the striking similarity between the parties' works shows that a likelihood of confusion exists under the second and third factors at the very least. Accordingly, Plaintiffs have established a valid claim for trade dress infringement sufficient to enter default judgement.

### C. Plaintiffs are Entitled to their Requested Relief

Plaintiffs seek injunctive relief, statutory damages, and attorney's fees. Having considered the pleadings and the applicable law, the Court finds Plaintiffs are entitled to this relief.

### 1. Injunctive Relief is Appropriate

Both the Copyright Act and the Lanham Act permit courts to enter injunctions to prevent copyright and trademark infringement. *See* 17 U.S.C. § 502; 15 U.S.C. § 1116. "To obtain a permanent injunction, a plaintiff must (1) succeed on the merits; (2) have no adequate remedy at law; (3) show that the threatened injury outweighs any damage to the defendant; and (4) demonstrate that the injunction will not disserve the public interest." *Arista Recs. LLC v. Salas*, No. Civ. 3:08-CV-855-O, 2009 WL 290185, at *3 (N.D. Tex. Feb. 5, 2009) (O'Connor, J.). Here, Plaintiffs meet all four requirements.

First, Plaintiffs have succeeded on the merits. *Id.* ("Courts have acknowledged that a default against a defendant is tantamount to actual success on the merits."). Second, Plaintiffs will have no adequate remedy at law without an injunction. Monetary damages standing alone do not prevent future infringements. *See Stygian Songs v. Johnson*, 776 F. Supp. 2d 233, 238 (N.D. Tex. 2011) (Means, J.) ("[A] damages recovery, though it will help compensate past infringements, will not prove effective at guarding against future infringements."). Third, Plaintiffs' threatened injury—continued infringement of their registered copyright and trade dress—outweighs any damage to Defendant. Indeed, the only damage to Defendant is the inability to sell products it was unauthorized to sell in the first place. Fourth, an injunction will not disserve the public interest. Rather, an injunction will serve the public interest by deterring infringement and protecting creativity. *See Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975) (explaining that the "ultimate aim" of copyright law is to "stimulate artistic creativity for the general public good"). Accordingly, Plaintiffs are entitled to injunctive relief according to the terms set forth in their Original Complaint.[10]

---

[10] *See* Compl. 6, ECF No. 1.

### 2. Statutory Damages are Appropriate

The Copyright Act and the Lanham Act permit plaintiffs to select either actual damages or statutory damages for infringement. *See* 17 U.S.C. § 504; 15 U.S.C. § 1117. Here, Plaintiffs seek four counts of statutory damages, one for each copyright and trade dress at issue. Section 504 of the Copyright Act permits courts to award damages for copyright infringement "in a sum of not less than $750 or more than $30,000 as the court considers just." *See* § 504(c). If a court finds that the infringement was committed willfully, it may use its discretion to increase the award "to a sum of not more than $150,000." *Id.* The Lanham Act employs a similar statutory damages scheme. Section 1117 permits courts to award damages for the use of a counterfeit mark in the amount of "not less than $1,000 or more than $200,000 per counterfeit mark per types of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c). If a court finds the use was willful, that court may award "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.*

Here, Plaintiffs allege that Defendant acted willfully. Defendants act willfully when they know their actions constitute infringement. *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988). Some courts have held that defaulting defendants are deemed to have admitted they acted knowingly and intentionally. *See, e.g., Neutron Depot, LLC v. Bankrate, Inc.*, No. 2:14-CV-192, 2016 WL 215544, at *4 (S.D. Tex. Jan. 19, 2016) (Ramos, J.); *see also Sculpt Inc. v. Sculpt N.Y., LLC*, No. CIV.A. H-14-3398, 2015 WL 6690224, at *5 (S.D. Tex. Nov. 3, 2015) (Miller, J.). The Court does not find that to be the case here. Plaintiffs contend that Defendant knew about the infringement by virtue of Defendant's Amazon.com counter-notification. But Defendant's counter-notification, stating that Defendant had a good faith belief the complaint was filed in error, is insufficient to establish that Defendant knowingly infringed Plaintiffs' copyright

10

and trade dress registrations. Indeed, the Court could equally infer that Defendant's counter-notification demonstrates Defendant did not know she was acting unlawfully.

Having found that Defendant did not act willfully, the Court determines an appropriate amount of damages within the ranges set out in the Copyright and Lanham Acts. Courts enjoy wide discretion in determining damages under these statutes. *Com. L. League of Am., Inc. v. George, Kennedy & Sullivan, LLC*, No. CIV.A. H-07-0315, 2007 WL 2710479, at *3 (S.D. Tex. Sept. 14, 2007) (Rosenthal, J.). To determine an amount, courts have considered factors such as "the willfulness of the defendant's conduct, the deterrent effect of an award on both the defendant and on others, the value of the copyright, whether the defendant has cooperated in providing necessary records to assess the value of the infringing material, and the losses sustained by the plaintiff." *Id.* Here, Plaintiffs have weighed the factors themselves, and requested that the Court award $2,000,000 if the Court finds Defendant acted willfully or $200,000 if not.

However, Plaintiffs have failed to establish their entitlement to $200,000 in statutory damages. They offer no evidence on the duration or scale of Defendant's infringement. And even one comparable case referenced by Plaintiff—albeit erroneously cited as the precedent of this Court in a misplaced discussion about fertilizer—only resulted in a $10,000 statutory damage award against a tobacco shop illegally selling trademarked water pipes. *Roor Int'l BV v. AKS1 Enter., Inc.*, No. CV H-18-3835, 2019 WL 3500911, at *5 (S.D. Tex. Aug. 1, 2019). Because the Court has not found Defendant acted willfully, and because of Plaintiffs' failure to prove their entitlement to substantial statutory damages, the Court determines that only a minimal damage award is warranted. Specifically, the Court finds it just to award Plaintiffs $5,000. This figure is an award of $1,250 per each copyright infringement ($2,500 total) and an award of $1,250 per each trade dress infringement ($2,500 total).

### 3. Attorney's Fees are appropriate

Lastly, Plaintiffs request attorney's fees in conjunction with either the Copyright Act or the Lanham Act. Under the Lanham Act, courts may award attorney's fees in "exceptional cases." *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372–373 (5th Cir. 2000). A case is exceptional if the defendant's infringement can be characterized as malicious, fraudulent, deliberate, or willful. *Id.* Because Defendant's actions were not willful, the Court may not award attorney's fees under the Lanham Act. Under the Copyright Act, however, attorney's fees are "the rule rather than the exception and should be awarded routinely." *Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985). Thus, the Court will award attorney's fees under the Copyright Act.

Courts in the Fifth Circuit primarily use the lodestar method to calculate attorney's fees. *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002). "A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). After conducting the lodestar calculation, courts may increase or decrease the lodestar based on the factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *see also Heidtman*, 171 F.3d at 1043. Courts may not adjust the lodestar based on a factor that was already considered when determining the original lodestar amount. *Johnson,* 488 F.2d at 717–19. The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of

the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* To facilitate in the lodestar calculation, courts require plaintiffs to produce documentation sufficient to support their requested fees. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010).

Plaintiffs request $8,000 in attorney's fees for this litigation. To support the request, Plaintiffs' counsel, "an attorney with 11 years of experience," asserts that he performed 20 hours of work at a billing rate of $400 per hour.[11] Plaintiffs refer to the State Bar 2015 Fact Sheet, which purportedly set the average hourly rate for intellectual property attorneys in the Dallas-Fort Worth metroplex at $370 per hour, to support their counsel's billing rate. Though the Court has reservations about whether an attorney with 11 years of experience spent 20 hours of work on this case,[12] the Court will assume the truth of Plaintiffs' allegations and award attorney's fees in the amount of $7,400 (20 hours at $370 per hour–the hourly rate from the State Bar 2015 Fact Sheet). The Court finds no need to adjust this amount based on the *Johnson* factors.

IV.   **CONCLUSION**

For the forgoing reasons, the Court **GRANTS** Plaintiffs' Motion. Accordingly, the Court enters default judgment as follows:

> (1) Defendant, its respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, are permanently **ENJOINED** from infringement, inducement of infringement, and contributory infringement of each of the Plaintiffs'

---

[11] Pls.' Mot. ¶ 63, ECF No. 11.
[12] To start, Plaintiffs' counsel misspelled Defendant's name in the title of the instant Motion. *See* Pls.' Mot., ECF No. 11. Moreover, portions of both the Plaintiffs' Complaint and the instant Motion are unmistakably copied and pasted from unrelated cases. *See, e.g.,* Compl. ¶ 10, ECF No. 1 (referencing Defendant conducting business in theaters); *see also* Pls.' Mot. ¶ 55, ECF No. 11 (referencing fertilizer).

copyrights and trade dresses, including but not limited to an injunction against making, using, selling, distributing, and/or offering for sale within the United States, and/or importing into the United States, any infringing products and/or services;

(2) Plaintiffs shall be **AWARDED** statutory damages in the amount of $5,000; and

(3) Plaintiffs shall be **AWARDED** attorney's fees in the amount of $7,400.

**SO ORDERED** on this **12th day** of **April, 2023**.

_Reed O'Connor_
**UNITED STATES DISTRICT JUDGE**